

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEPHEN SUSINKA, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 13 C 1693 |
| v. ) | |
| ) | Chief Judge Rubén Castillo |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Petitioner Stephen Susinka's *pro se* motion to reconsider this Court's order denying his petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (R. 10, Pet'r's Mot.) For the reasons set forth below, Petitioner's motion is denied, and this case is dismissed with prejudice.

## RELEVANT FACTS

The relevant facts relating to Petitioner's criminal conviction are set forth in a pair of opinions by the Seventh Circuit Court of Appeals, *see United States v. Benabe*, 654 F.3d 753, 757 (7th Cir. 2011); *United States v. Morales*, 655 F.3d 608 (7th Cir. 2011), and several by this Court, *see, e.g.*, *United States v. Delatorre*, 572 F. Supp. 2d 967 (N.D. Ill. 2008); *United States v. Delatorre*, 522 F. Supp. 2d 1034 (N.D. Ill. 2007); *United States v. Delatorre*, 508 F. Supp. 2d 648 (N.D. Ill. 2007); *United States v. Delatorre*, 438 F. Supp. 2d 892 (N.D. Ill. 2006). The Court repeats the facts here only as they pertain to the Petition and the instant motion to reconsider.

Petitioner was one of sixteen individuals indicted by a federal grand jury on various racketeering-related charges in 2006. Petitioner and his codefendants were members of the Aurora Deuces, the Aurora, Illinois chapter of the Insane Deuce Nation street gang. Petitioner

was responsible for carrying guns and going on missions for the Insane Deuces. On more than one occasion, he served as a driver for other Insane Deuces who murdered or attempted to murder members of rival gangs. Petitioner was charged with racketeering conspiracy (Count One) and narcotics conspiracy (Count Nine).

In an effort not to overwhelm the jury, and due to the logistical challenge of trying so many defendants in a single courtroom, this Court severed the case into two trials. Petitioner was tried with the alleged leaders of the gang. On April 21, 2008, after a two-month trial and more than two weeks of deliberation, a jury convicted Petitioner of participating in a racketeering conspiracy (Count One) and was unable to reach a verdict on the narcotics conspiracy charge in Count Nine. The Court declared a mistrial on Count Nine. On January 20, 2009, this Court sentenced Petitioner to twenty years of incarceration on Count One to run concurrently with his pending state sentence, followed by five years of supervised release, and imposed a $2,500.00 fine.

On January 22, 2009, Petitioner filed his notice of appeal, challenging both his conviction and his sentence. The Seventh Circuit affirmed his conviction on August 18, 2011, and modified his sentence to impose a term of three years of supervision upon his release from prison rather than five. *United States v. Benabe*, 436 F. App'x 639, 660-62 (7th Cir. 2011).

Petitioner filed a petition for writ of certiorari with the Supreme Court on January 26, 2012.[1] (R. 10, Pet'r's Mot. at 1; R. 24, Pet'r's Decl. ¶ 5.) He states that his original deadline for filing was January 26, 2012, but his petition was returned for corrections twice, and the Supreme

---

[1] Even though Petitioner's certiorari petition was postmarked January 30, 2012, (R. 19 at 11, Mar. 2, 2012 Letter), *pro se* prisoners are considered to have filed documents with a court upon delivering the documents to the prison authorities to mail. *Houston v. Lack*, 487 U.S. 266, 276 (1988). Petitioner alleges that he delivered his certiorari petition to the mail room staff on January 26, 2012.

2

Court extended his deadline for filing his certiorari petition until July 14, 2012. (R. 10, Pet'r's Mot. at 1-2.) Petitioner does not contend that he filed his corrected petition, nor was this Court able to locate a grant or denial of certiorari from the Supreme Court.

Petitioner filed the instant habeas petition pursuant to 28 U.S.C. § 2255 on March 5, 2013. (R. 1, Pet'n.) On March 18, 2013, he filed an amended petition (the "Petition"), (R. 6, Am. Pet'n), and moved to toll the deadline for filing his petition, (R. 5, Mot. Toll Deadline). The Court denied Petitioner's motion to toll the deadline and his amended petition on March 21, 2013. (R. 7, Min. Entry.) In its order, the Court stated:

> After a careful review of Petitioner's untimely motion pursuant to 28 U.S.C. Section 2255, said motion is denied with prejudice for the following reasons. The trial record and direct appeal opinion, *U.S. v. Benabe*, 654 F.3d 753 (7th Cir. 2011)[,] confirm that said untimely petition fails to assert any valid, non-waived constitutional error. The defendant received a fair trial and sentence while represented by *two* competent trial counsel.

(*Id.*) Petitioner now moves the Court to reconsider its denial of the Petition. (R. 10, Pet'r's Mot.) Petitioner argues that the Petition was not untimely because he received multiple extensions from the Supreme Court to his deadline for filing his certiorari petition. (*Id.* at 2-3.) Petitioner additionally argues that the Court's statement that Petitioner failed to "assert any valid, non-waived constitutional error" requires further explanation because Petitioner asserted valid constitutional claims of ineffective assistance of counsel and a Sixth Amendment violation at sentencing. (*Id.* at 3-8; R. 21, Pet'r's Suppl. at 19-51.) Finally, Petitioner contends that even if the Court denies his section 2255 petition, it should correct his sentence to credit the time he served in state custody as part of his federal sentence. (R. 10, Pet'r's Mot. at 8.)

Subsequent to and in support of his motion for reconsideration, Petitioner has filed two declarations, (R. 19; R. 24); a supplement, (R. 21); a special supplement regarding the

3

applicability of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), (R. 23); and an appendix to his statement of facts, (R. 26). The Court has considered these materials in its ruling.

## LEGAL STANDARDS

A "motion to reconsider" does not exist under the Federal Rules of Civil Procedure. *Talano v. NW. Med. Faculty Found.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001). A motion that seeks to challenge the merits of a ruling by a district court will automatically be considered as having been filed under Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. *Mares v. Busby*, 34 F.3d 533, 535 (7th Cir. 1994) ("Though the plaintiffs did not file their motion to reconsider pursuant to any one of the Federal Rules of Civil Procedure, the fact that it challenges the merits of the district court's decision means that it must fall under Rule 59(e) or Rule 60(b)." (internal quotation marks omitted)). When determining whether a motion to reconsider comes under Rule 59 or Rule 60, the substance of the motion rather than the form is determinative. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Because Petitioner challenges the Court's substantive application of law, the Court treats his motion as one under Rule 59(e). *Compare* Fed. R. Civ. P. 59(e) *with* Fed. R. Civ. P. 60(b).

Rule 59(e) "enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). For a motion to alter or amend a judgment pursuant to Rule 59(e) to succeed, the movant "must demonstrate a manifest error of law or fact or present newly discovered evidence," *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011), and he "must 'clearly establish' one of the aforementioned grounds for relief." *Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n.3 (7th Cir. 2001)). A manifest error of law under Rule 59(e)

is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). This is a high standard that is "not demonstrated by the disappointment of the losing party." *Id.* It is well-settled that it is improper to use a Rule 59(e) motion "to advance arguments or theories that could and should have been made before the district court rendered a judgment," *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 512 (7th Cir. 2007) (quoting *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995)), nor should a movant seek to rehash previously rejected arguments, *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Motions pursuant to Rule 59(e) should only be granted in rare circumstances. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

Section 2255 allows an incarcerated prisoner to request his sentence be vacated on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "[R]elief under 28 U.S.C. § 2255 is limited to an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bischel v. United States*, 32 F.3d 259, 263 (7th Cir. 1994) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal quotation marks omitted)).

## ANALYSIS

### I. Timeliness of the Petition

Petitioner first argues that the Court's denial of the Petition as untimely was an error of law. (R. 10, Pet'r's Mot. at 3.) A petition for habeas corpus must be filed, as relevant here, within a year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). "Finality attaches when [the Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Accordingly, when petitioners fail to file a petition for certiorari, their conviction is considered final at the expiration of the 90-day time period to file a petition for certiorari. *See* Sup. Ct. R. 13(1). If a petition for rehearing is timely filed in the lower court, the 90-day time period runs from the date the court denies rehearing or the date of the entry of judgment subsequent to the rehearing. Sup. Ct. R. 13(3). Petitioner's conviction was affirmed by the Seventh Circuit on August 18, 2011, and the Seventh Circuit denied his request for a rehearing en banc on October 26, 2011. Thus, Petitioner's petition for certiorari was due on January 24, 2012, and his window for filing a habeas petition closed on January 25, 2013. Petitioner filed the present petition on March 5, 2013.

Petitioner argues that the instant petition is not untimely, however, because the Supreme Court granted him extensions of the deadline to file his petition for certiorari. (R. 10, Pet'r's Mot. at 3.) Petitioner contends that on January 26, 2012, he delivered his petition for writ of certiorari to the mail room staff at the prison. (R. 24, Pet'r's Decl. ¶ 5.) On March 2, 2012, Petitioner received a letter from the Clerk of the Supreme Court acknowledging receipt of his petition for writ of certiorari. (R. 19 at 11, Mar. 2, 2012 Letter.) The Clerk returned Petitioner's

6

certiorari petition because it did not include an affidavit or declaration of indigency and it did not include the lower court's opinion. (*Id.*) The letter requested that Petitioner correct those errors and resubmit his certiorari petition as soon as possible, and it informed him that "[u]nless the petition is submitted to this Office in corrected form within 60 days of the date of this letter, the petition will not be filed." (*Id.*) Petitioner states that he resubmitted his certiorari petition by hand delivery to the prison mail room staff on April 27, 2012. (R. 24, Pet'r's Decl. ¶ 11.)

On May 14, 2012, Petitioner received a second letter from the Clerk of the Supreme Court acknowledging receipt of his petition for writ of certiorari. (R. 19, Pet'r's Decl. at 13, May 14, 2012 Letter.) The Clerk returned Petitioner's certiorari petition because it did not include an affidavit or declaration of indigency. (*Id.*) The letter once again requested that Petitioner correct the error and resubmit his certiorari petition as soon as possible, and it once again informed him that "[u]nless the petition is submitted to this Office in corrected form within 60 days of the date of this letter, the petition will not be filed." (*Id.*) Petitioner thus contends that he had until July 14, 2013 to file his habeas petition.[2] (R. 10, Pet'r's Mot. at 2.)

Petitioner miscalculated his deadline for filing his petition for writ of certiorari as January 26, 2012, when in fact his deadline was January 24, 2012—90 days after the Seventh Circuit's denial of rehearing. His petition for writ of certiorari was therefore untimely by two days. An untimely certiorari petition is generally insufficient to toll the deadline for filing a habeas petition. *See, e.g.*, *United States v. Buckles*, 647 F.3d 883, 887 (9th Cir. 2011) ("If [petitioner's] petition for certiorari was timely, his conviction became final when the Supreme Court denied the petition. . . . If his petition for certiorari was untimely, his conviction became final ninety days after we denied rehearing."); *Vargas v. United States*, No. 10-CV-02231, 2011 WL

---

[2] Petitioner miscalculated this deadline, as sixty days from May 14, 2012, was July 13, 2012. This miscalculation is inconsequential to the issues at hand.

7

5325619, at *1 (C.D. Ill. Nov. 4, 2011) ("an untimely petition for a writ of certiorari does not toll the statute of limitations under § 2255"); *Edwards v. United States*, 295 F. App'x 320, 321 (11th Cir. 2008) (unpublished) ("Because the district court found that Edwards's petition for writ of certiorari in the Supreme Court was untimely, the petition did not toll the time for filing his § 2255 motion.").

The Supreme Court has the discretion to waive strict enforcement of the 90-day deadline in criminal cases. The Supreme Court has held that, unlike the 90-day period for civil cases, which derives from statute and thus must be strictly enforced, the 90-day period for criminal cases "may be waived because the procedural rules adopted by the Court for the orderly transaction of its business are not jurisdictional and can be relaxed by the Court in the exercise of its discretion." *Bowles v. Russell*, 551 U.S. 205, 212 (2007) (internal alterations and quotation marks omitted) (quoting *Schacht v. United States*, 398 U.S. 58, 64 (1970)). Nevertheless, the Supreme Court's treatment of an untimely petition for writ of certiorari as timely does not affect the petitioner's deadline for filing a habeas petition. *See United States v. Bendolph*, 409 F.3d 155, 159 n.5 (3d Cir. 2005) (even though the Supreme Court treated petitioner's certiorari petition as timely filed, petitioner "did not get the benefit of tolling for the time the petition was under consideration by the Supreme Court because the petition was untimely"). Once 90 days has passed without the filing of a certiorari petition, the judgment is final; once final, no subsequent action can unfinalize the judgment. *See, e.g.*, *Henry v. United States*, No. 5:05-CR-59 MTT, 2012 WL 425987, at *1 (M.D. Ga. Feb. 9, 2012) ("Petitioner filed an untimely writ of certiorari after his judgment became final. This does not impact the Court's analysis of the timeliness of the Petitioner's section 2255 motion. . . . [H]is section 2255 motion is still untimely, because his conviction became final when the time period for properly filing the

8

certiorari petition expired."); *United States v. Simpson*, No. CRIM.A. 6:04-63-DCR, 2011 WL 13871, at *2 (E.D. Ky. Jan. 4, 2011) ("once the judgment is final and the limitations period commences, filing an untimely [petition for writ of certiorari] will not delay the running of the statute"); *Darby v. United States*, No. CIV.A. 2:09CV52-WHAW, 2009 WL 856994, at *1 (M.D. Ala. Mar. 26, 2009) ("The untimely petition for a writ of certiorari . . . did not extend the date on which the judgment of conviction became final." (citing *Edwards*, 295 F. App'x at 321)).

An extension of time by the Supreme Court in which to file a petition for writ of certiorari may extend the deadline for filing a habeas petition. In *United States v. Walker*, a district court in the Tenth Circuit faced this issue. No. 04-CR-0099-CVE, 2008 WL 3200688 (N.D. Okla. Aug. 5, 2008). There, the Tenth Circuit had affirmed the petitioner's conviction and sentence on May 30, 2006, but the petitioner had requested and received from the Supreme Court a deadline extension for filing his petition for writ of certiorari until October 2, 2006. *Id.* at *8. The petitioner did not ultimately file a certiorari petition, but the district court nevertheless held that his "conviction became final on October 2, 2006 when his time to file a petition for writ of certiorari expired," and it found that his habeas petition filed on October 1, 2007, was timely. *Id.*

In dicta in *Warmus v. United States*, the Eleventh Circuit stated that it had "not previously held that by granting an extension for the time to file a certiorari petition, the Supreme Court also delays the date on which a conviction becomes final," but that "such a result would be consistent with" prior holdings "that the judgment of conviction becomes final once the time expires for filing a petition for certiorari." 253 F. App'x 2, 5 (11th Cir. 2007) (quoting *Close v. United States*, 336 F.3d 1283, 1284-85 (11th Cir. 2003)) (internal quotation marks omitted). In both *Warmus* and *Walker*, however, the petitioners sought extensions in which to file their certiorari petitions *before* their original filing deadlines expired. Thus, in those cases,

the conviction was not final when the periods of time for filing the certiorari petitions were extended. Here, on the other hand, the two sixty-day filing extensions Petitioner received came *after* he filed his untimely petition for writ of certiorari and thus after the judgment against him became final. *See Darby*, 2009 WL 856994, at *1 ("[I]n the absence of a petition for writ of certiorari, the judgment became final after expiration of the 90-day period, [and] the judgment did not revert back to being "non-final" because of Darby's subsequently filed—and late-petition for writ of certiorari."). This Court finds no reason to hold that Petitioner's extensions, granted after his conviction became final for the purpose of section 2255, disrupted the finality of the judgment.

The cases Petitioner cites in an attempt to avoid this conclusion do not support his position. In *Estremera v. United States*, No. 09 C 6519, 2012 WL 707151, at *1-*2 (N.D. Ill. Mar. 2, 2012) *rev'd and remanded*, 724 F.3d 773 (7th Cir. 2013), the petitioner applied to the Supreme Court for an extension of time to file a petition for writ of certiorari more than two weeks before his initial certiorari deadline expired. *Abraham Estremera v. United States*, No. 07 A 407 (U.S. Nov. 14, 2007). The extension was granted, but the petitioner failed to file a petition. *Id.* The district court held that an evidentiary hearing would be necessary to determine whether the petitioner's habeas petition, which was filed more than one year after the original certiorari deadline but less than one year after the extended deadline, was timely, and it denied the habeas petition on the merits instead. *Estremera*, 2012 WL 707151, at *1-*2. The Seventh Circuit agreed that the petition "could not be dismissed as untimely without a hearing" and that it was "permissible to reject a petition on the merits without resolving a limitations defense," but reversed the decision on the merits. *Estremera*, 724 F.3d at 775. In *Vargas v. United States*, the district court denied the petitioner's section 2255 motion as time-barred, noting that his untimely

petition for writ of certiorari did not toll the statute of limitations. 2011 WL 5325619, at *1. In the petitioner's motion to reconsider, he established that his certiorari petition was, in fact, timely and that it was returned to him multiple times after his timely submission with letters from the Clerk of the Supreme Court giving him 60 days to make requested corrections. *Id.* at *2. Although there are similarities between the instant case and both *Estremera* and *Vargas*, there is one key difference: Petitioner's certiorari petition was untimely. As noted in *Vargas*, "an untimely petition for a writ of certiorari does not toll the statute of limitations under § 2255." *Id.* at *1. Petitioner's conviction became final for the purpose of section 2255 on January 24, 2012, when 90 days had elapsed since the Seventh Circuit's denial of Petitioner's request for a rehearing and no certiorari petition had been filed. *See Clay*, 537 U.S. at 527.

The Court finds no manifest error of law in its conclusion that the Petition, which was filed on March 5, 2013, is untimely because judgment became final on January 24, 2012.[3] Rather than deny the Petition on timeliness grounds, however, the Court simply noted in its prior order that the Petition was untimely and denied the Petition for failure "to assert any valid, non-waived constitutional error," concluding that Petitioner "received a fair trial and sentence while represented by *two* competent trial counsel." (R. 7, Min. Entry.) The Court now revisits Petitioner's constitutional claims.

## II. Petitioner's Constitutional Claims

Petitioner argues that to the extent that the Court's prior denial of the Petition was a ruling on the merits, the Court should reconsider its ruling. (R. 10, Pet'r's Mot. at 4.) Petitioner contends that his Sixth Amendment rights were violated when the Court made a finding at

---

[3] To the extent that Petitioner seeks to use his declaration to extend his motion to reconsider to include the Court's denial of his motion to toll the deadline for filing his section 2255 petition, (R. 5), the Court denies such motion as moot because the Petition is denied on the merits.

11

sentencing that Petitioner had participated in the murder of Robert Perez.[4] (R. 21, Pet'r's Suppl. at 44.) Petitioner argues that the jury did not find Petitioner guilty of participating in Perez's murder and thus the Court is barred by the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), from considering Perez's murder at Petitioner's sentencing. (*Id.* at 44-51.) In *Apprendi*, the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Nevertheless, "counts on which the jury acquits may be considered in sentencing, if the judge finds by a preponderance of the evidence that the criminal activities occurred," as long as those findings do not increase the statutory maximum punishment. *United States v. Genova*, 333 F.3d 750, 762-63 (7th Cir. 2003) (citing *United States v. Watts*, 519 U.S. 148 (1997); *Apprendi*, 530 U.S. 466 (2000)). In fact, the Supreme Court noted in *Apprendi* that its holding did not apply to "cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict." 530 U.S. at 487 n.13.

The statutory maximum for the racketeering conspiracy Petitioner was convicted of by the jury is 20 years imprisonment. 18 U.S.C. § 1963(a). Courts have broad discretion to impose a sentence within a "prescribed range of punishment," and "the exercise of such discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts." *Dillon v. United States*, 560 U.S. 817, 828-29 (2010) (citing *Apprendi*, 530 U.S. at 481). Because

---

[4] Petitioner also contests the Court's denial of his ineffective assistance of counsel claim. (R. 10, Pet'r's Mot. at 4-6.) In his motion, however, Petitioner simply rehashes his arguments from his original petition, which this Court has already ruled on, rather than pointing to any error of law or newly discovered evidence. (*Compare id.*; R. 21, Pet'r's Suppl. at 19-43, *with* R. 3, Pet'r's Mem. at 1-9.) Accordingly, this issue is not the proper subject of a Rule 59(e) motion, *see Sigsworth*, 487 F.3d at 512; *Caisse Nationale*, 90 F.3d at 1270, and the Court need not address it.

Petitioner's 20-year sentence is not "more severe than the statutory maximum for the offense established by the jury's verdict," *Apprendi*, 530 U.S. at 487 n.13, the Court's consideration of Petitioner's participation in the activities of the Insane Deuces—including Perez's murder—does not constitute a violation of *Apprendi* or of the Sixth Amendment.

Petitioner next argues that the recent Supreme Court decision in *Alleyne v. United States* is "an intervening change in the law [that] undermines the validity of the judgment" and thus provides grounds for this Court to reconsider its prior denial. (R. 23, Special Suppl. at 2 (citing 11 Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2810 (1995).) In *Alleyne*, the Supreme Court held that any fact that increases the mandatory minimum is an element of the crime that must be found beyond a reasonable doubt by the jury. 133 S. Ct. at 2160-63. Petitioner contends that under the rule announced in *Alleyne*, this Court violated Petitioner's Sixth Amendment right by making a finding at sentencing that his RICO conspiracy conviction was based upon the murder of Robert Perez, contradicting the jury's finding that Petitioner was not liable for the Perez murder. (R. 23, Special Suppl. at 3-7.) Generally, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion). "Under the *Teague* framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). Petitioner's conviction became final on January 24, 2012; *Alleyne* was decided on June 17, 2013. Thus, under *Teague*, *Alleyne* does not apply to Petitioner's case.

Petitioner argues, however, that *Alleyne* did not announce a new rule of criminal procedure but rather reaffirmed an old rule. (R. 23, Special Suppl. at 8-12.) The Court does not consider Petitioner's arguments in support of this position because the Seventh Circuit has

13

expressly rejected this position. *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) ("*Alleyne* establishes a new rule of constitutional law.").

In the alternative, Petitioner argues that *Alleyne* establishes a rule of "watershed" magnitude such that it falls under one of the exceptions to *Teague*'s bar against retroactive application. (R. 23, Special Suppl. at 12 (citing *Teague*, 489 U.S. at 311)). *Teague* creates exceptions for the retroactive application of a new rule on collateral review "only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Whorton*, 549 U.S. at 416 (internal alterations and quotation marks omitted) (quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990)). Petitioner acknowledges that *Alleyne* extended the rule of *Apprendi* and argues that because the Supreme Court has allowed *Apprendi* to be applied retroactively on collateral review, *Alleyne* should be applied retroactively as well. (R. 23, Special Suppl. at 13-15.)

Petitioner does not cite a case in which *Apprendi* was applied retroactively on collateral review, however, and this Court is unable to locate any such case. To the contrary, "[n]o Court of Appeals, let alone [the Supreme] Court, has held that *Apprendi* has retroactive effect." *Harris v. United States*, 536 U.S. 545, 581 (2002) (Thomas, J., dissenting) *overruled on other grounds by Alleyne*, 133 S. Ct. 2151 (2013); *see also Schriro v. Summerlin*, 542 U.S. 348, 358 (2004) (holding that *Ring v. Arizona*, 536 U.S. 584 (2002), which applied *Apprendi* to Arizona's capital sentencing scheme, was not a watershed rule and did "not apply retroactively to cases already final on direct review"). In *Simpson*, the Seventh Circuit explained that *Alleyne* is an extension of *Apprendi* and that the Supreme Court has determined that "other rules based upon *Apprendi* do not apply retroactively on collateral review." 721 F.3d at 876 (citing *Schriro*, 542 U.S. 348). The Seventh Circuit predicted that the Supreme Court "will not declare *Alleyne* to be retroactive"

and that, unless and until it does, the Seventh Circuit would not apply *Alleyne* retroactively. *Id.* The Seventh Circuit is not alone in declining to apply *Alleyne* retroactively on collateral review. *See, e.g.*, *Rogers v. United States*, No. 12-6141, --- F. App'x ---, 2014 WL 1272121, at *3 (6th Cir. Mar. 31, 2014) ("However, the constitutional rules of criminal procedural adopted in *Alleyne* and *Peugh* are not applicable on collateral review of Rogers's sentence, because the judgment became final before the Court's decisions in *Alleyne* and *Peugh*." (citing *Teague*, 489 U.S. at 310-11)); *Chester v. Warden*, No. 12-15119, --- F. App'x ---, 2014 WL 104150, at *4 (11th Cir. Jan. 13, 2014) ("[B]ecause it is based on the *Apprendi* rule, *Alleyne's* rule does not apply retroactively on collateral review." (internal citations omitted)); *In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (denying authorization to file a second or successive section 2255 motion because "[t]he [Supreme] Court has not held that *Alleyne* applies retroactively to cases on collateral review"). This Court declines to depart from the general rule that *Alleyne* does not apply retroactively on collateral review. Accordingly, the intervening decision in *Alleyne* does not provide grounds for reconsideration of the Court's denial of the Petition.

### III. Petitioner's Request for a Sentencing Correction

Finally, Petitioner argues that the Court's denial of his request for a sentence correction violates the principles of res judicata because at sentencing, this Court "decided to rule in favor of Petitioner" and ruled that his sentence would be retroactively concurrent with his state sentence. (R. 10, Pet'r's Mot. at 4-5.) Sometime in 2002, Petitioner received a nine-year sentence in the Illinois Department of Corrections. Because he was in federal custody pursuant to a writ of *habeas corpus ad prosequendum*, Petitioner continued to serve his state sentence while in federal custody during trial and trial preparations. *See Short v. Revell*, 152 F. App'x 542, 544 (7th Cir. 2005). At his sentencing before this Court, defense counsel argued that his

15

sentence should run concurrently with his state sentence, and the government advocated for a consecutive sentence.

The Court has carefully examined its sentencing order and the transcript of the sentencing hearing. The order sentenced Petitioner to twenty years of imprisonment "to run concurrent with [his] pending state sentence." At Petitioner's January 20, 2009 sentencing hearing, the Court told Petitioner it would use its discretion "to make your sentence to be served concurrent with your current state sentence." Neither at sentencing nor in the sentencing order did the Court indicate that the sentence would be retroactively concurrent. Instead, the Court imposed a sentence that would run concurrent with the undischarged remainder of Petitioner's state sentence. Petitioner's instant request for the Court to correct his sentence, (*see* R. 10, Pet'r's Mot. at 8), is not based on the principles of *res judicata*, but on Petitioner's misconception that the Court essentially sentenced him to only 13 years because it gave him credit for his incarceration on state charges prior to his federal sentencing. As the Seventh Circuit explained in affirming the denial of Petitioner's petition under 28 U.S.C. § 2241, this premise is inaccurate. *Susinka v. Conpenhaver*, 538 F. App'x 724, 725 (7th Cir. 2013).

It is widely recognized that imposing a sentence retroactive to the beginning of a pending state sentence requires the express intent of the sentencing judge. *See, e.g.*, *Nieves v. Scism*, 527 F. App'x 139, 141 (3d Cir. 2013) (unpublished); *United States v. Perez*, 151 F. App'x 773, 776 (11th Cir. 2005); *United States v. Pisciotta*, 990 F.2d 1264, at *2 (9th Cir. 1993) (unpublished). Furthermore, the commentary to the sentencing guideline clearly indicates that the concurrency of a concurrent sentence begins on the day the sentence is imposed. *See* U.S.S.G. § 5G1.3 cmt. n.2 (2009); *see also Short*, 152 F. App'x at 544 ("A federal sentence cannot commence before it is imposed" (citing *United States v. Walker*, 98 F.3d 944, 945-46 (7th Cir. 1996))). Having

reviewed the sentencing order and the transcript of the sentencing hearing, and relying on its independent recollection of the sentencing hearing, the Court concludes that it did not previously "rule in favor of Petitioner," (*see* R. 10, Pet'r's Mot. at 4), by ordering a retroactively concurrent sentence. The Court thus finds no manifest error of law that provides a basis for reconsideration of its denial of the Petition.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for reconsideration of the Court's denial of petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (R. 10) is DENIED.

ENTERED:

**Chief Judge Rubén Castillo
United States District Court**

**Dated: May 14, 2014**